## DONNELLY v. NORTHWESTERN LIFE INS. CO.*

### No. 6279.

Circuit Court of Appeals, Fifth Circuit.

June 1, 1932.

Clay Cooke, of Fort Worth, Tex., Wm. Ervin Terrell, of Waco, Tex., and Wm. J. Berne, of Fort Worth, Tex., for appellant.

W. T. Henry and Frank W. Wozencraft, both of Dallas, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, as beneficiary, brought a suit at law to recover on two policies of life in-

*Rehearing denied July 5, 1932.

surance, each for $10,000, issued upon the life of her husband, Walter W. Donnelly, by appellee. The policies were for a ten-year term and contained the usual provisions for a change of beneficiary, for grace of one month for the payment of premiums, for reinstatement upon evidence of insurability satisfactory to the company, and for incontestability after one year from date of issue, except for nonpayment of premiums. Each policy on its face contained the following provision as to the payment of premiums: "This policy is issued in consideration of the application therefor, a copy of which is attached hereto or endorsed hereon, and is a part of this Contract, and the payment in advance of the premium of Forty and 30/100 Dollars, being the Premium for one year's Term Insurance from the date hereof and the advance reserve, if any, required by law, and of the payment of a like amount upon each 6th day of February, May, August, November in every year hereafter during the continuance of this Policy, and until premiums have been paid for Ten full years from the date hereof."

The policies were issued February 6, 1929. The insured died on December 11, 1929, within the year. On January 19, 1931, more than a year after the date of the policies, the suit was brought, on the theory that, as each policy on its face showed the receipt of an advance premium of $40.30 for one year's insurance, the policies were in force at the time of the insured's death.

Appellee defended on the ground that, on a reasonable construction of the policies as written, the premiums paid, $40.30, were only for three months and the policies had lapsed for nonpayment of premiums. In the alternative, appellee set up that by mutual mistake and through clerical error the policies as written did not express the true contract and prayed for reformation.

The court treated the alternative plea as an equitable defense filed under the provisions of section 274b, Jud. Code (28 USCA § 398). A jury was impaneled, evidence was taken, and the court submitted to the jury the question as to whether under the contract $40.30 was to be a quarterly premium. The jury answered in the affirmative, and the court then directed a verdict on the whole case for appellee.

Appellee could have filed a bill in equity to reform the contract on the ground of mutual mistake. The rule is clearly stated in Hearne v. New England Mut. Marine Insurance Co., 20 Wall. 488, 22 L. Ed. 395, as follows: "Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred."

Under the provisions of section 274b, Jud. Code (28 USCA § 398), a plea for the reformation of the contract could properly be interposed as an equitable defense without the necessity of filing a bill separately. While a jury was impaneled, this could be done in a suit in equity, in the discretion of the court. It is evident that the judge considered the verdict as advisory. So far as the equitable plea is concerned, we may review the case as an appeal in a case in equity. Jud. Code § 269, as amended (28 USCA § 391); Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232.

The following facts appear without dispute: Donnelly applied for five policies of insurance on his life, each for $10,000. Three of them are not involved in this suit and require no discussion. He was accepted as a good risk, and the policies were issued on the annual payment of premiums basis. He then returned the policies and asked, as he had the right to do, that they be changed to the quarterly premium basis. In endeavoring to correct the policies, purely through a mistake of a clerk in the home office of the company, the statement was left showing the payment of $40.30 as the premium for one year instead of for one-quarter of the year, up to May 6, 1929. Other parts of the policies indicate plainly that the annual premium on each was $152, and that $40.30 was only a quarterly premium. A memorandum on the application, made at the home office of the company, but which application was made part of and annexed to the policy, and delivered with it, shows clearly that the policies were issued on the quarterly basis. The testimony of Thorp, state manager of Texas for the company, is to the effect that, when the policies were changed to the quarterly basis, he mailed them direct to Donnelly; that he met Donnelly about 60 days after that and asked him if he was pleased with the policies, and the latter said he was. Later, when the first 90 days had expired, notices were mailed to Donnelly in the usual course, and Thorp then called on him personally. Donnelly stated that he intended to pay the premium and asked Thorp to call again. Thorp made about three or four different calls, saw

Donnelly personally, and asked him to pay the premiums, and he said he would pay them, but did not do so. Thorp urged Donnelly to reinstate the policies, and Donnelly signed an application for reinstatement, but it was not sent to the home office nor executed, because no money was ever paid for the second quarterly premiums. We need not further review the evidence except to say that it leaves no doubt whatever that the insertion of $40.30 as advance payment for one year was purely a clerical error, and it was never the intention of either party to the contract that it should be considered other than the payment of the premium for one quarter. Indeed, this is so plain from the policies that extrinsic evidence was hardly necessary.

Appellant testified that when her husband received the policies he handed all five of them to her and said he was making her a little present; that she looked at the top policy, one of those in suit, and noted that it showed the policy as paid up for one year; that she put all the policies in her strong box and never looked at them again until after her husband's death. Presumably on this statement, she contends that she has a vested right in the policies and the company is estopped to urge a defense of nonpayment of premiums, considering the statement on the face of the policies. It is not shown that the company had done anything else upon which waiver or estoppel could be predicated.

It is further contended that equity will not reform a contract so as to work a forfeiture, and that the parties should be put back in the position they occupied at the execution of the policies. On this theory the unpaid premiums for three-quarters were tendered.

Appellant also relies upon the incontestable clause of the policies.

When it is borne in mind that, after reformation of the documents evidencing the contract in order to make them conform to the true agreement, the suit was on policies that had lapsed for nonpayment of premiums, the contentions of appellant are easily disposed of.

It is the general rule that, where the right to change the beneficiary is reserved in the policy, the beneficiary acquires no vested right. 14 R. C. L. § 345, verbo "insurance." Neither statute nor special agreement was shown to take the policies out of the general rule. Appellant received nothing from the manual delivery of the policies that she did not already have. She was bound by the terms of the policies. The rights of the beneficiary were dependent on the keeping of the policies in force. Wastun v. Lincoln Nat. Life Ins. Co. (C. C. A.) 12 F.(2d) 422; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765.

Conceding it to be the general rule that equity will not reform a contract so as to work a forfeiture, the question of forfeiture is not involved in this case. The policies lapsed for nonpayment of premiums. Therefore they were at an end according to their terms. When the overdue premiums were tendered, it was too late to compel the company to accept them.

The incontestable clause has no application, as the case comes within the exception therein stated.

It is unnecessary to discuss the other contentions of appellant, as they are entirely without merit. There is no doubt that appellee was entitled to a directed verdict.

The record presents no reversible error. Affirmed.